Afternoon, Your Honors. My name is Christopher Bugbee. I am CGA counsel for the appellant Balraj Singh, who is also the defendant below. This is an appeal from Mr. Singh's conviction for being an alien in possession of a firearm while being unlawfully in the United States. Your Honors, I wish to reserve five minutes. Our system of justice is founded on basic principles. Someone's allocated like 20 minutes to this case, but I don't think you really need more than 10. It's not that complicated. I would tend to agree with the court. Well, we know a lot of the facts, too, because we, I think, got some of the other people. I'm also aware of that. You're not a repeat, but I think he's a repeat. I understand Mr. Smoot was here yesterday. I would, therefore, request three minutes if the court is allocating 10 minutes per side. Thank you, Your Honor. Our system of justice is premised on a few basic principles. One of those is that before bringing somebody to a criminal trial where they may face all of the possible consequences of a criminal conviction, we require notice and an opportunity for that person to prepare a defense. I won't go into the facts. As the Court has already indicated, it is well aware of some of the facts, but some understanding of the background of how this case proceeded to trial is necessary to truly understand how Mr. Singh was prejudiced in his defense when the district court denied Mr. Singh's request for a continuance. As the Court is aware, Mr. Singh was originally charged with possessing pseudoephedrine with the intent to deliver, knowing that or having reasonable cause to believe. He was denied the motion for continuance, but the Court appointed an investigator to look into the relationship between the person who was at the store and somebody else. Yes, that is correct. And had the continuance been granted, what would Mr. Singh have shown? How was he prejudiced by not getting the continuance? Well, Your Honor — What would have turned up that didn't? It's difficult to say. One thing that may have turned up is we did have a good-faith belief that there was a relationship between Mr. Curtis, who was the very, very late witness. In fact, I know the evidence shows technically that his — Well, that investigator appointed to determine and look into that relationship. Yes. What was the result? The result was that those individuals who we thought might be helpful in making that determination could not be found during the two days of trial. Oh, during the two days, they might have been found at a later time, you're saying? I suppose that's possible, yes. But during trial, those people were not found. And you said that this was — you had — it wasn't at the — you had time during the trial because the person was at the end of the trial, correct? Your Honor, my recollection, and I admit it could be wrong, but my recollection is that Mr. Curtis was called fairly early in the trial, possibly on the first day. I may be incorrect. I'd have to look at the record. But it is interesting, and it's very important to note, this was a two-day trial at its longest. In fact, I believe it ended sometime before the end of the second day. Mr. Singh, in fact, had — Since then, I guess, you could have also looked into whether there was such a relationship, tried to find witnesses. But nothing like that has ever come out, as I understand it. Nothing like that has come out. That is true. Well, how could you say — I mean, you know, if you had in the next week found somebody and said, look, if we had had the continuance, we could have got this evidence before the court. You have nothing like that. On the issue of the relationship between Ms. Cower and Mr. Curtis, I have nothing like that. Okay. Well, what else would have been developed had you had the continuance? What's — the thrust of our argument is this, Your Honors, and I will lead up to answering your question. Mr. Singh was put in a position — Just try to lead up to answering, because it doesn't look like there's any prejudice. Maybe the continuance should have been granted. Maybe the judge should have been more lenient and all that and granted the continuance. But he failed to do so or she failed to do so. What was the prejudice to you? The prejudice was we did not have time to prepare. You've had time since then and still haven't developed anything. As far as the relationship with Ms. Cower and Mr. Curtis. What else have you developed that you would have been able to? I haven't developed any additional evidence, but I will point out, and it's not well laid out in my brief, but the main thrust and problem that we were put into is coming into this trial, as I've indicated in my briefing, Mr. Singh's defense was based wholly on an allegation that the government could not prove its very, very circumstantial case. Under those circumstances, I certainly had no intent, nor did Mr. Singh intend to testify. Mr. Singh, in fact, was put in a position when our defense had to change. He simply could not let these new allegations go unanswered, where he did have to testify. And what resulted was the prejudice that we have outlined. It was a subject of our motion for a new trial. And it's the subject of one of the issues that we or one of the reasons we are requesting a new trial in this case. That is that going into Mr. Singh's testimony while my time and my investigators' time were spent looking for witnesses who could testify as to the relationship of Mr. Curtis and Ms. Cower, there was very little or no time to work with Mr. Singh about his testimony. What resulted was the very confusing and quite damaging, that's another way of saying prejudicial, testimony that was elicited by the government from Mr. Singh in this case. The subject that was discussed between the government's attorney and Mr. Singh was the subject of a motion in limine which is set out in some detail in the record and which, as you can tell from the record, was a matter of some detail and some urgency that was discussed between the judge and the government and Mr. Singh. We anticipated, as you can tell from the record, that the very thing that happened might and would happen. And that is that the testimony regarding using Mr. Singh's desire to have a firearm in relation to a wholly irrelevant firearm back in February of 2002 as compared to his actual possession of another firearm in August of 2002 was so confusing that Mr. Singh, in trying to keep the testimony straight as the judge instructed that it would have to come out, stumbled. And he stumbled not because he was lying in regards to the firearm from August, but because he was confused by the government's questioning, which I've laid it out in the record and I won't go into it, but was set up to start out as very specific questioning regarding the firearm that was at issue in the case. And then it was generalized to, in Mr. Singh's mind, you can tell from the record, somebody who's on the stand struggling with this testimony very well would see the generalization. And now all of a sudden he's being asked about two firearms, one of which has been ruled inadmissible. That is. Yeah, but that's also what they call in the business is flinging open the door so that cross-examination comes in. We're not alleging that that cross-examination, it was, I will say this, it is our belief that the cross-examination was misleading and led Mr. Singh down the wrong road. But more importantly, for purposes of prejudice in regards to the request for the continuance, given the time that we requested, which simply, I don't recall, but it was not a very long request. One week would have been plenty to look into the issues in regards to the witnesses and then also to have the opportunity to consult with Mr. Singh regarding his testimony. That testimony might have come out differently, which is, in fact, prejudice. Do you think the court viewed you differently because you were on your third trial with Mr. Singh? In what respect might the court be suggesting? Well, because you've been working with that particular, I mean, you've been working with that client for a long time. I mean, this was his third trial, right? I mean, he had two mistrials previously, and then it finally came down to this, right? Yes, that is true. And they weren't unrelated subject matter, right? They were unrelated, yes. In regards to possession of the firearm, the firearm was not at issue. Well, it was different. It was different. I give you that. But it wasn't completely unrelated. As regards to the long-arm firearm, it was completely unrelated. It had never come up in either of the two prior trials, nor had it even been hardly discussed between counsel during the pendency of those trials and then moving on to this trial, which I think is very important to note, was only a month or so after the end of the other two trials, which were both fairly lengthy trials. I say I'm running out of time. I would be happy to end now to save some more time. Thank you, Your Honors. All U.S. attorneys have pins in their lapels. Come with suits? They come with mine, Your Honor. Thank you, Your Honors. May it please the Court, Russ Smoot for the United States in response to this. Your Honor, the Court has demonstrated familiarity with the parties' briefings in all these matters. Other than possibly to make a few points, the United States' argument would pretty much consist of a reiteration of the brief. So, first, I would just open it up for questions from the Court on any of the issues presented by the defendant. Well, here you have twice you tried to nail him on the drug count, the drug offense. So that didn't work. So then you start off on the gun. Why did you wait so long? Well, Your Honor, I guess I can answer that concerning the procedure as far as how the charges were made and how they ultimately came to trial. The drug cases were initially indicted pursuant to the drug investigation that the Court is aware of in August of 2002. The firearm case, although the firearm was found at the same time as the search warrants concerning the drug case in August of 2002, there was some more investigation concerning Mr. Singh's legal status in the United States or, more properly, illegal status. Once it was determined by the office that Mr. Singh was, in fact, an alien in possession of the firearm, the subsequent charge was presented to the grand jury. I believe it would be in the brief, but I believe it was presented in January of 2003. Well, how long does it take you to find out that someone's an alien? Well, Your Honor, it doesn't necessarily take from August to January. It would, at the time, the United States was, as this, the drug charge was determined to be a very complex trial. As the Court is aware, involving many defendants, the energy and, I guess, the attention at that point was on the drug charge. The firearm charge was filed prior to the time as which trial started. It was, if not, I don't believe it was joined in a superseding indictment because the United States did anticipate, as is common in our district, that felon in possession or possession of firearm charges are often severed from drug charges. Consequently, procedurally, when it came down to which trial would go first, I believe that there was the drug charges trials were set first and... Why would they be often severed? Guns, you're... Your Honor, I think that... Everybody in Montana's got a rifle, right? Yes, Your Honor. And I just, my understanding, Your Honor, is that while severance is not necessarily required by this court legally, that it clearly, severances or failure to sever often present reviewable issues. And in cases such as this, it is very typical that district courts will end up severing a felon in possession of a firearm, which is, in effect, similar to this case from a drug case. Well, because there you have to show the person's a felon, you know. You know, that's sort of, can be a little... True. This, I would indicate, Your Honor, in that I was involved. I was not involved in trial counsel on this case, but I was involved as trial counsel on the drug cases. And I believe that in this particular case, I am not sure. And I can supplement this if the court requires, but I believe... That's fine. I'm just curious. And I believe that the alienage was also something that was not referenced in trial in the drug cases. I think just to reference some of the court's questions to opposing counsel, Your Honor, it is the government's position that there was not prejudice. This is an abuse of discretion standard. But really, under the four-part test concerning whether or not to grant a trial day continuance, the most important factor in consideration is prejudice to the defendant. And the defendant was, through counsel and through counsel being provided an investigator, was given the opportunity to follow potential leads while counsel was, in fact, in trial. Counsel indicated that this witness, Mr. Curtis, had been interviewed prior to trial, had been investigators, had the opportunity to interview. The court granted the defendant, counsel, the opportunity to interview, again, Mr. Curtis, as well as Ms. Cowher during the trial, if need be. And finally, Mr. Curtis, as well as Ms. Cowher, were inquired during cross-examination as to any bias-causing relationship. Counsel has indicated that there was a good faith belief that there may have been some type of relationship, yet the only support in the record from that is the statements made by the defendant concerning any improper or bias-causing relationship. And I would submit that the jury considered that accordingly. Subsequently, no further information was found that would have reflected on whether or not that was, in fact, prejudicial. I would indicate that the United States brief sets out not only references to the record, but actually sets out the exchange between the government's counsel and Mr. Singh. And I would submit that that shows that Mr. Singh, in fact, opened himself up to whatever inference that Mr. Singh now would claim was confusing or detrimental to his case. I would indicate that government counsel did not ask about the prior handgun, I believe it was, but that's not reflected in the record, but a prior gun other than the gun involved in this case. Finally, there was one point that I just wanted to raise, Your Honor, on another issue concerning the admissibility of evidence concerning the other trial or the use of drug evidence. The United States indicated that this court has previously held in Butcher that there is a nexus between firearms and guns. The defendant has brought up... Drugs and guns. Yes, drugs and guns, Your Honor. The defendant has brought up United States v. Blackstone in reply to the government's position. And I would indicate that this is a case that is not uncommon for attorneys to present to cases in which are the facts more like Butcher, are they more like Blackstone, Your Honor? I would say that the facts in this case are much more like Butcher, where there was some evidence of drug trafficking or drug activity as well as firearms. In Blackstone, I would indicate that the reason why there wasn't the nexus was because the evidence concerning drugs was limited to paperwork that showed how to make methamphetamine, and it was limited to a personal use amount of marijuana, I believe. In this case, which is, again, more like Butcher, there was an indication that there had been unlawful sales of pseudoephedrine. Whether or not those were ultimately determined, his actions were ultimately determined unlawful in federal court under federal statutes, I believe that part of the defendant's defense in federal court was that he knew that he was violating the law, yet he believed he was violating the state law. To see that my time is ending, I simply ask the court to affirm the conviction of Mr. Balraj Singh. Your Honor, as my honorable colleague has mentioned, that the attention was on the drug charges, and that is certainly the case, I can assure you. In fact, because the attention was on the drug charges, the simple fact is there wasn't an investigation by the government done until the eve of trial when they knew they were going to trial on the firearm charge. In fact, to answer your question, one reason that they were held off on the gun charge is if Mr. Singh had been convicted of this drug charge, you can be darn sure that they would have dismissed on the gun charge and Mr. Singh would be doing a very, very lengthy sentence in a federal prison for having violated the Controlled Substances Act. Mr. Singh should not be penalized for the government having held off to see what happens on his drug case. And they did hold off. And then at the last moment, on a Saturday, counsel is informed of what turns out to be the pivotal witness in the case. Their entire case was almost put together at the last minute with notice on Saturday, a trial on Monday, that this witness would be testifying. There was no other choice that Mr. Singh had than to completely reformulate his defense. I can assure you that did not happen over the weekend. The reformulation of his defense began the moment I received the phone call, and it continued all the way through trial. And that prejudiced Mr. Singh in defending himself. Thank you. Thank you very much. And the matter will stand submitted. And we'll go now to  Salas,
judges: Pregerson, Thompson, Callahan